**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STUDENT DOE, minor suing under | : | |
| fictitious name for privacy reasons, by and | : | |
| through STUDENT DOE's parents, | : | Civil Action No. 22-14 |
| FATHER DOE and MOTHER DOE, suing | : | |
| under fictitious names to protect the identity | : | |
| and privacy of STUDENT DOE, their | : | |
| minor child; and FATHER DOE and | : | |
| MOTHER DOE, individually and on their | : | |
| own behalf | : | |
| | : | |
| vs. | : | |
| | : | |
| ABINGTON FRIENDS SCHOOL | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2022,

upon consideration of Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF Doc. No. 1), and

any response thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion to Dismiss

is **GRANTED**.  It is **ORDERED** and **DECREED** that Plaintiffs' Complaint (ECF Doc. No. 1)

against Defendant is hereby **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
                                                                                              J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STUDENT DOE, et al. | : | |
| | : | |
| vs. | : | Civil Action No. 22-14 |
| | : | |
| ABINGTON FRIENDS SCHOOL | : | |

## <u>DEFENDANT, ABINGTON FRIENDS SCHOOL'S<br>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

Defendant, by and through its counsel, Marshall Dennehey Warner Coleman & Goggin,

respectfully moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  In support thereof, Defendant submits the attached Memorandum of Law.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY:_____
LEE C. DURIVAGE
Identification Number: 205928
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Phone: (215) 575-2584
Fax: (215) 575-0856

Attorney for Defendant,
Abington Friends School

Dated: <u>March 7, 2022</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

STUDENT DOE, et al.          :
                                     :
                vs.               :         Civil Action No. 22-14
                                     :
ABINGTON FRIENDS SCHOOL     :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, ABINGTON FRIENDS SCHOOL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 4, 2022, Plaintiffs filed a lawsuit against Abington Friends School ("AFS"), alleging that AFS breached its contract with Plaintiffs (Count I), violated the covenant of good faith and fair dealing in connection with the contact (Count II), committed the torts of intentional infliction of emotional distress ("IIED") (Count III) and negligent infliction of emotional distress ("NIED") (Count IV) as to Student Doe, and violated Title VI (Count V) and Section 504 of the Rehabilitation Act (Count VI) in connection with Student Doe's attendance at AFS during the 2019-2020 and 2020-2021 school years.  See generally Plaintiffs' Complaint (ECF Doc. No. 1).

Specifically, Plaintiffs' Complaint alleges "Student Doe is a white, Jewish child with a disability who attended AFS Middle School during Student Doe's 8th grade school year (2019-2020) and AFS Upper School during Student Doe's 9th grade school year (2020-2021). Pl. Compl., at ¶ 2.  Plaintiffs' Complaint alleges that "Student Doe's parents….and AFS entered into binding enrollment contracts for the 2019-2020 academic year, and later for the 2020-2021 academic year" and parent "became entitled to all the rights conferred by the promises in the enrollment contracts, the AFS Handbooks and other written policies, and AFS was contractually bound to keep those promises to the Plaintiffs." Pl. Compl., at ¶ 18.  Plaintiffs allege that prior to attending AFS, Student Doe "received special education services and supports from the local public school district" and

Student Doe also had a "well-documented diagnosis of Anxiety." Pl. Compl., at ¶ 19. Plaintiffs'
Complaint alleges that Student Doe "struggled in keeping up with the classes" "immediately" when
Student Doe started school in September 2019 and "AFS provided Student [with] extended time
to complete assignments, quizzes and tests, and allowed Student Dow to take breaks, to leave class,
and to delay taking or finishing quizzes/tests when Student Doe was experiencing anxiety or panic
attacks." Pl. Compl., at ¶¶ 23-25. Parents' Complaint alleges that Student Doe continued to
struggle in Student Doe's classes and AFS "provided [Student Doe] with additional push-in and
pull-out support in Student's math class and the curriculum was modified for Student Doe." Pl.
Compl., at ¶ 27. Plaintiffs' Complaint further confirms that Student Doe was provided with a "no
grading" policy in most of Student Doe's classes and parents were provided with bi-weekly check-
ins by AFS regarding Student Doe's progress at school. Pl. Compl., at ¶ 27.

Plaintiffs' Complaint alleges that an incident occurred during Student Doe's bar/bat mitzvah
during the 2019-2020 school year, wherein the DJ played an edited version of a song that
"repeatedly used the 'N-word'" and that "at least one of the young white guests at the party (not
Student Doe) reportedly sang the real lyrics aloud using the 'N-word.'" Pl. Compl., at ¶ 32.
Plaintiffs' Complaint generally alleges that a couple of months following that incident, "Student 1
and a group of black AFS Middle School students, singled out Student Doe, denounced Student
Doe as a 'racist' and began openly harassing and bullying Student Doe at school, through text
messaging, and on social media." Pl. Compl., at ¶ 33. Specifically, in support of allegations that
Student Doe was allegedly harassed, Plaintiffs' Complaint alleges the following incidents occurred
during the 2019-2020 school year:

- Student 1, Student 2 and Student 3 referred to Student Doe as a "racist" for what occurred
  at Student Doe's bar/bat mitzvah and "in the fall/winter of 2019, because Student Doe had
  voiced opinions in class and openly expressed support for Joe Biden and Mike Bloomberg
  during the Democratic primaries;"

- Student 1 told Student Doe that "all Jews were racist" and he had "never met a Jew who wasn't racist" at some point during the 2019-2020 school year;

- Student 1, Student 2 and Student 3 referred to Student Doe as "racist" during the spring of 2020 after Student Doe typed the word "monkey" in response to Student 1 (who is African American) sending an emoji with a picture of a monkey; and

- Student 5 sent Student Doe an image depicting Hitler with the statement "I would make a Jew joke but I'm sure you're heard it 6 million times" on May 22, 2020;

Pl. Compl., at ¶¶ 36-37, 39, 41.  Plaintiffs' Complaint alleges that on May 28, 2020 Father Doe emailed Student Doe's academic advisor and request that Student 1, Student 2 and Student 3 not be in Student Doe's group for the 2020-2021 school year. Pl. Compl., at ¶ 42  Plaintiffs' Complaint alleges that during the summer of 2002, Father Doe and Mother Doe emailed AFS's Head of Upper School and allegedly "discussed the ongoing harassment and bullying that Student Doe had been subjected to by Student 1, Student 2 and Student 3" and generally alleges that "AFS did not take prompt steps to investigate the reports of harassment and bullying…nor did AFS confront or discipline the three AFS students." Pl. Compl., at ¶¶ 45-46.

Plaintiffs' Complaint alleges that Student Doe's 9th grade year began virtually and then transitioned to a hybrid model where Student Doe attended school two days/week at the end of September 2020.  Plaintiffs' Complaint alleges that AFS "failed to recognize its legal obligations…to support Student Doe, a student with a disability, and these failures included (1) failure to evaluate Student Doe, (2) failure to convene a meeting to determine what accommodations Student Doe needed to access the school's programs, (3) failure to issue a written plan that provided for accommodations Student Doe required as a result of Student Doe's disabilities; and (4) failure to provide accommodations and supplemental services to Student Doe constituting discrimination under Section 504." Pl. Compl., at ¶ 57.

Plaintiffs' Complaint alleges that "while the peer harassment and bullying situation was initially management due to AFS Upper School's hybrid schedule…the peer harassment, bullying and disparagement of Student Doe by the same group of black students at AFS, and the false accusations of Student Doe being a 'racist' continued at school, through texting and on social media." Pl. Compl., at ¶ 58.  Specifically, in support of allegations that Student Doe was allegedly harassed, Plaintiffs' Complaint alleges the following incidents occurred during the 2020-2021 school year:

- Student 1, Student 2, Student 3 and Student 6 referred to Student Doe as "racist" and of "blackfishing" for using bronzer that made Student Doe's skin appear darker on December 6, 2020;

- An anonymous post was made on Instagram wherein Student Doe was referred to as a "racist" when a meme was created that used two pictures of Student Doe to show a difference in Student Doe's skin tone when using bronzer on December 10, 2020;

- Student 1 allegedly spread a photograph of one of Student Doe's friends that said "look at this [N-word]" and that "Student Doe was told that Student 1…was telling everyone that Student Doe had created it and shared it on social media, which was not true" on December 15, 2020; and

- On May 5, 2021, Student 4 sent "Student Doe a message…calling Student Doe a 'privileged white [expletive]."

Pl. Compl., at ¶¶ 59, 62, 65, 117.   While Plaintiffs' Complaint acknowledges that AFS's administrators communicated with Father Doe and Mother Doe and met with the 9th grade students as a whole in January 2021 and February 2021, they generally allege that AFS violated its handbook procedures by not disciplining the alleged harassers and further allege that "Father Doe and Mother Doe ultimately were left with no choice but to withdraw Student Doe from AFS and to transfer Student Doe to another school. Pl. Compl., at ¶ 121.  While Plaintiffs now bring various contractual, tort and statutory claims against AFS, it is evident that Plaintiffs' claims are deficient as a matter of law and must be dismissed, with prejudice.

## II.   **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for failure to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6)*. The purpose of a 12(b)(6) motion is to test the legal sufficiency of the complaint and to "streamline litigation by dispensing with needless discovery and fact finding." ***Neitzke v. Williams***, *490 U.S. 319, 326-27 (1989)*. Therefore, when it appears from the face of the pleading that a plaintiff can prove no set of facts that would entitle him to relief, the court must dismiss plaintiff's claims. *See* ***Hishon v. King & Spalding***, *467 U.S. 69, 73 (1984)*.  Further, a complaint may be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *See* ***Odom v. Erie Ins. Exchange***, *2008 WL 5188828,  *1 (W.D. Pa. 2008)*; *see also* ***Bell Atlantic Corp. v. Twombly***, *550 U.S. 544 (2007)*; ***Ashcroft v. Iqbal***, *556 U.S. 662, 684 (2009)* (stating that the decision in ***Twombly*** "expound[s] the pleading standard for 'all civil actions'). Indeed, the United States Supreme Court has unequivocally determined that the pleading standard under Federal Rule of Civil Procedure 8 demands more than an "unadorned, the defendant-unlawfully-harmed-me accusation." ***Iqbal***, *556 U.S. at 678*. Moreover, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." ***Id.*** Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" ***Id.***, *citing* ***Twombly***, *at 557*; *see also* ***Evancho v. Fisher***, *423 F.3d 347, 351 (3d. Cir. 2005)* (stating that "a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss"). Where, as here, Plaintiffs can prove no set of facts in support of their claims against Defendants, Plaintiffs' claims in the Complaint should be dismissed as a matter of law.

III.   **ARGUMENT**

     A.   Plaintiffs' Breach of Contract Claim Should be Dismissed.

A plaintiff alleging breach of contract must specifically plead "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." ***Reformed Church of the Ascension v. Hooven & Sons, Inc.***, *764 A.2d 1106, 1109 (Pa. Super. Ct. 2000) citing* ***Corestates Bank N.A. v. Cutillo***, *723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)*; ***Schreiber v. Olan Mills***, *627 A.2d 806 (Pa. 1993)* (identifying the elements for imposing contractual liability).

Here, Plaintiffs' Complaint generally alleges that AFS breached its contract with Plaintiffs, asserting that "AFS breached its contract" (referenced as Enrollment Agreements that "incorporated the terms of AFS's Handbooks and other AFS written policies" by "[f]ailing to protect Student Doe from discrimination and harassment at school on the basis of" "disability, race, national origin, religion" and failing to provide Student Doe with a Formal Education Plan.  See generally, Pl. Complaint, at ¶¶ 129-131.  In short, Plaintiffs seek return of two years of tuition and various other costs based upon alleged bullying and parents' disagreement with actions taken in response to the alleged bullying.  Despite Plaintiffs contentions, they fail to identify any actual terms of the Enrollment Contract that would support a breach of an agreement, let alone contractual language that reflects a meeting of the minds on all essential terms.  To the contrary, Plaintiffs largely repeat allegations that are reflected in their tort claims and their statutory claims.  Moreover, while Plaintiffs contend that AFS breached an agreement set forth in a Handbook or "other AFS written policies," they fail to cite any language from any of those documents that would reflect a binding, enforceable contract between Plaintiffs and AFS.  The lack of citation is not surprising, as courts have often rejected breach of contract claims premised on an alleged violation

of handbook/policies and procedures manuals. *See **Dobson v. Milton Hershey School**, 356 F.Supp. 3d 428 (M.D. Pa. 2018)* (denying plaintiff's motion to amend complaint and assert a breach of contract claim where the plaintiff "reasserts breach [of contract] but provides no details beyond reciting the bare elements of a claim," noting that "[s]uch threadbare recitation of elements 'will not do'" under the Supreme Court's precedent set forth in Iqbal); *see also **David v. Neumann Univ.**, 187 F.Supp. 3d 554, 559-560 (E.D. Pa. 2016)* (citing cases and granting motion to dismiss plaintiff's breach of contract claim against university, noting that plaintiff's identification of university's "zero tolerance" anti-harassment and discrimination policies did not contractually guarantee a right to plaintiff and "merely declare[d] the University's approach to complaints involving illegal discrimination, harassment and/or retaliation"); ***G. v. Faye School**, 931 F.3d 1 (1st Cir. 2019)* (upholding dismissal of breach of contract claim, finding that "aspirational diversity statements" set forth in student handbook "are exactly the sort of generalized, aspirational statements that are insufficiently definite to form a contract"). As Plaintiffs have failed to plead a plausible claim for breach of contract, Count I of Plaintiffs' Complaint should be dismissed as a matter of law.

B.  Plaintiffs' Breach of Implied Covenant of Good Faith and Fair Dealing Claim Should be Dismissed as a Matter of Law.

Count II of Plaintiffs' Complaint alleges that "Pennsylvania law recognizes an implied covenant of good faith and fair dealing in all contracts" and summarily alleges that "AFS breached the implied covenant of good faith and fair dealing and caused harm to Plaintiffs. Pl. Complaint, at ¶¶ 136-137. Despite this contention, "Pennsylvania courts have made clear—and [the Third Circuit] has recognized—that Pennsylvania does not allow an action for breach of the covenant of good faith and fair dealing separate from a breach of contract claim." ***Landan v. Wal-Mart Real Estate Business Trust**, 775 Fed. Appx. 39, 42 (3d. Cir. 2019), citing **Davis v. Wells Fargo**, 824*

*F.3d 333, 341 (3d. Cir. 2016)* (affirming dismissal of good faith and fair dealing claim on the basis that Pennsylvania does not recognize an independent cause of action for that claim); ***Burton v. Teleflex, Inc.***, *707 F.3d 417, 424-25 (3d. Cir. 2013)* (accord).  Based on the foregoing, Count II of Plaintiffs' Complaint should be dismissed as a matter of law.

       C.    <u>Student Doe's Intentional Infliction of Emotional Distress Claim Should be Dismissed as a Matter of Law.</u>

In Pennsylvania, in order to sustain a claim for IIED, the plaintiff must show: "(1) conduct was extreme and outrageous; (2) conduct was intentional or reckless; (3) conduct caused emotional distress; and (4) the distress was severe." ***Tupper v. Haymund & Lundy***, *2001 WL 936650, *5 (E.D. Pa. 2001) citing* ***Chuy v. Philadelphia Eagles Football Club***, *595 F.2d 1265, 1273-74 (3d. Cir. 1979)*.  Conduct has been deemed to be extreme and outrageous where the action "goes beyond all possible bounds of decency, and [is] to be regarded as atrocious and utterly intolerable in a civilized community." ***Swisher v. Pitz***, *868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)*.  Likewise, "[i]t is not enough that the defendant has acted within intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." ***Id***. *at 1231*.  Examples of cases in which the Pennsylvania courts have found a sufficient basis for IIED include:

> ***Papieves v. Lawrence***, *263 A.2d 118 (Pa. 1970)* (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents); ***Banyas v. Lower Bucks Hosp.***, *437 A.2d 1236 (Pa. Super. Ct. 1981)* (defendants intentionally fabricated records to suggest plaintiff had killed a third party which led to plaintiff being indicted for homicide); ***Chuy v. Philadelphia Eagles Football Club***, *595 F.2d 1265, 1273-74 (3d Cir. 1979)* (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Id.* *at 1231 citing* ***Hoy v. Angelone***, 720 A.2d 745, 754 (Pa. 1998); *see also* ***Doe v. Univ. of Pennsylvania***, *270 F.Supp. 3d 799 (E.D. Pa. 2017)* (citing cases and that that "courts in this district have 'repeatedly found' that 'as reprehensible as deliberate discrimination can be,…discrimination alone does not meet the extreme and outrageous standard necessary to state a claim for [IIED]'").

Moreover, a plaintiff must show some "resulting physical harm due to the defendant's outrageous conduct." *See* ***Reeves v. Middletown Athletic Assoc.***, *866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004)* (affirming dismissal of intentional infliction of emotional distress claim because plaintiff's complaint only alleged serious and permanent physical injury without specifying the type of injury). Accordingly, any claim for IIED without evidence of an accompanied physical harm fails as a matter of law.

Here, Student Doe's IIED claim fails as a matter of law. Indeed, there is nothing contained in Plaintiffs' Complaint—other than conclusory allegations—which remotely suggests that AFS engaged in any extreme and outrageous conduct. To the contrary, Student Doe's claim is premised on purported harassment by other students outside of school. Of course, as the Pennsylvania Supreme Court noted in ***Hoy***, this tort is reserved "for only the most clearly desperate and ultra extreme conduct" and courts throughout Pennsylvania have routinely dismissed these claims premised on actual discrimination and even when the intent to inflict emotional distress was criminal in nature. Yet, here, the only actions referenced by Student Doe as to AFS in an alleged failure to discipline alleged harassers. This type of action falls far short of the extreme and outrageous conduct necessary to sustain such a claim for IIED. Accordingly, Count III of Plaintiffs' Complaint should be dismissed as a matter of law.

Similarly, Student Doe has failed to allege sufficient facts to demonstrate any type of physical harm or physical manifestation associated with alleged emotional distress, as required

under Pennsylvania law.  Indeed, Student Doe merely makes a conclusory allegation that "AFS intentionally and outrageously subjected Student Doe to severe emotional distress manifesting in significant physical injuries."  Of course, this is the exact "formulaic recitation of the elements of a cause of action" that the Supreme Court in *Iqbal* determined "will not do."  Accordingly, Count III of Plaintiffs' Complaint should be dismissed.

        D.     <u>Student Doe's Negligent Infliction of Emotional Distress Claim Should be Dismissed as a Matter of Law</u>.

In Pennsylvania, a plaintiff attempting to set forth a claim for NIED must establish "(1) that defendant had a contractual or fiduciary duty toward [him or her]; (2) that plaintiff suffered a physical impact; (3) that plaintiff was in a zone of danger and at risk of an immediate physical injury; or (4) that plaintiff had a contemporaneous perception of tortuous injury to a close relative." *Zeglen v. Miller*, *2007 WL 5005243, \*6 (M.D. Pa. 2007)*; *see also* *Walsh v. Krantz*, *2008 WL 3981492, \*8 (M.D. Pa. 2008)* (accord).

Here, Student Doe has failed to present any facts in the Complaint to establish a claim for NIED as to AFS.  Indeed, Count IV simply repeats the allegations contained in Student Doe's IIED claim, without regard to the fact that there are different requirements for a NIED claim.  Of course, as noted above, there is no plausible contractual duty owed to Student Doe and there are no allegations set forth in the Complaint alleging that Student Doe is relying on any other theories to support the NIED claim.  As Student Doe's allegations fall well short of the pleading requirements set forth by the Supreme Court in *Twombly* and *Iqbal*, Counts IV of Plaintiffs' Complaint should be dismissed.

        E.     <u>Student Doe's Title VI Claim Fail as a Matter of Law</u>.

Title VI of the Civil Rights Act provides, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits

of, or be subject to discrimination under any program or activity receiving Federal financial assistance." *See **Williams v. Pennridge School Dist.**, 2018 WL 6413314 (E.D. Pa. 2018), quoting 42 U.S.C. § 2000d.*  In order to sustain a Title VI claim premised on student-on-student harassment, a plaintiff must establish that (1) the defendant receives federal funds; (2) racial harassment occurred; (3) the harassment occurred under "circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[ed]l (4) the funding recipient had "actual knowledge" of the harassment; (5) the funding recipient was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] depriv[d] the victims of access to the educational opportunities or benefits provided by the school. ***Williams***, *2018 WL 6413314 at \*6, citing **Davis v. Monroe Cnty. Bd. of Educ.**, 526 U.S. 629, 644-645, 650 (1999).*

Of course, "courts have found that harassment that takes place off of school grounds and/or outside of school hours does not occur under circumstances where the District exercised substantial control over either the harasser or the context in which the harassment occurred." ***Id.*** *at \*7; see also **M.S. v. Susquehanna Township School Dist.**, 2017 WL 6397827, \*10 (M.D. Pa. 2017)* (finding that harassment that occurred through social media was not within the school district's control).  Moreover, the Supreme Court has determined that whether conduct rises to the level of actionable harassment "depends on a constellation of surrounding circumstances, expectations, and relationships." ***Davis***, *526 U.S. at 651* (internal quotation omitted).  Indeed, in evaluating student-on-student harassment claims, courts "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults" and "[d]amages are not available for simple acts of teasing and name-calling among school children…even where these comments target differences in [race]." ***Williams***, *2018 WL 6413314*

*at \*10, citing **Davis**, 526 U.S. at 561.*  In fact, "court have repeatedly found that isolated or sporadic instances of teasing or harassment, even when related to race…are not actionable." ***Id.***; *see also* ***Whitfield v. Notre Dame Middle School***, *412 Fed. Appx. 517 (3d. Cir. 2011)* (finding that the several instances of purported racial harassment was not so severe, pervasive or objectively offensive that it deprived her of access to educational opportunities); ***Williams v. Pennridge School District***, *782 Fed. Appx. 120 (3d. Cir. 2019)* (affirming dismissal of Title VI racial harassment claim premised on seven incidents of harassment, finding that "none of the incidents amounted to severe and discriminatory harassment" and further noting that while the "incidents may be strong evidence that her fellow students disliked her,…they are not evidence of harassment"); ***B.D. v. Cornwall Lebanon School Dist.***, *2021 WL 1253522, \*15 (M.D. Pa. 2021)* (granting dismissal of student's Title VI claim, which included the use of a racial slur toward student).

Here, Count V of Plaintiffs' Complaint alleges that "Student Doe was subjected to racial harassment, bullying and harassment and a hostile environment at AFS on the basis of Student Doe's race, color, and national origin" and that "AFS created a hostile environment against Student Doe in violation of Student Doe's civil rights under Title VI by failing to protect Student Doe from discrimination, bullying and harassment on the basis of Student Doe's race, color, and national origin." Despite Plaintiffs' contentions, it is clear that Student Doe cannot sustain Student Doe's burden of demonstrating intentional race, color, and/or national origin harassment—yet alone that the purported harassment was "so severe, pervasive, and objectively offensive that it could be said to have deprived Student Doe of access to the educational opportunities provided by the school. Similarly, Student Doe cannot demonstrate any type of deliberate indifference by the school;

rather, Plaintiffs' Complaint confirms that they are simply trying to have their judgment substituted for that of AFS in asserting that the purported harassers should have been disciplined.

First, while Plaintiffs' Complaint makes the generalized assertion that several students "harassed" and "bullied" Student Doe because of Student Doe's race, color and/or national origin, Plaintiffs' Complaint is devoid of any facts to demonstrate a plausible claim of intentional discrimination.  Rather, Plaintiffs' Complaint confirms that several of these students opined that Student Doe was "racist" following a party in which Student Doe's invited guest(s) openly used the "n-word," Student Doe used the word "monkey" in a group chat, and that other student (not identified as harassers in the complaint) believed Student Doe used a racial slur during class in December 2020.  Student Doe does not, however, link these purported incidents to Student Doe's race, color or national origin in any fashion.[1]

Second, a review of the purported incidents confirm that no severe, pervasive or objectively offensive harassment occurred.   Specifically, Plaintiffs' Complaint specifically alleges the following incidents of alleged harassment:

- Student 1 "denounced Student Doe as a 'racist' and began openly harassing and bullying Student Doe at school, through text messaging, and on social media" during an undefined time period after Student 1 heard the use of racial language at Student Doe's bar/bat mitzvah;

- Student 1, Student 2 and Student 3 referred to Student Doe as a "racist" for what occurred at Student Doe's bar/bat mitzvah and "in the fall/winter of 2019, because Student Doe had voiced opinions in class and openly expressed support for Joe Biden and Mike Bloomberg during the Democratic primaries;"

- Student 1 told Student Doe that "all Jews were racist" and he had "never met a Jew who wasn't racist" at some point during the 2019-2020 school year;

- Student 1, Student 2 and Student 3 referred to Student Doe as "racist" during the spring of 2020 after Student Doe typed the word "monkey" in response to Student 1 (who is African American) sending an emoji with a picture of a monkey;

---

[1] Plaintiffs' Complaint appears to suggest that the alleged harassment was, at times, due to the fact that Student Doe is white, and then in other situations to the fact that Student Doe is Jewish.

- Student 5 sent Student Doe an image depicting Hitler with the statement "I would make a Jew joke but I'm sure you're heard it 6 million times" on May 22, 2020;

- Student 1, Student 2, Student 3 and Student 6 referred to Student Doe as "racist" and of "blackfishing" for using bronzer that made Student Doe's skin appear darker on December 6, 2020;

- An anonymous post was made on Instagram wherein Student Doe was referred to as a "racist" when a meme was created that used two pictures of Student Doe to show a difference in Student Doe's skin tone when using bronzer on December 10, 2020;

- Student 1 allegedly spread a photograph of one of Student Doe's friends that said "look at this [N-word]" and that "Student Doe was told that Student 1…was telling everyone that Student Doe had created it and shared it on social media, which was not true" on December 15, 2020; and

- On May 5, 2021, Student 4 sent "Student Doe a message…calling Student Doe a 'privileged white [expletive]."

Pl. Compl., at ¶¶ 36-37, 39, 41, 59, 62, 65, 117.  Significantly, the majority of allegations in Plaintiffs' Complaint appear to involve out-of-school incidents that took place on social media, which would not be in AFS's control.  Similarly, the above allegations reveal—at worst—sporadic incidents of teasing among school children that were made weeks and months apart.  Indeed, the facts here closely resemble ***Williams***, where the Third Circuit found that seven incidents over the course of 2 years (and six incidents within four months) did not "amount[] to severe and discriminatory harassment" and that while the "incidents may be strong evidence that [Student Doe's] fellow students disliked [Student Doe]…they are not evidence of harassment."  Like ***Williams***, Student Doe's allegations reveal that Student 1 apparently disliked Student Doe—not on the basis of race, color or national origin, but apparently due to incidents that occurred at a party at Student Doe's home and on social media (where that student believed he was being discriminated against).

-14-

Next, while Plaintiffs allege that AFS was deliberately indifferent to alleged harassment, they fail to allege a plausible basis for this claim.  Indeed, there are no allegations in the complaint indicating that any administrator at the school was aware of any of the incidents of alleged harassment during the course of the 2019-2020 school year at the time the incidents occurred. Rather, Plaintiffs' Complaint merely alleges that Father Doe emailed an academic advisor and requested that Student 1, Student 2 and Student 3 not be in Student Doe's group during the 9th grade school year.  Plaintiffs point to no incidents of alleged harassment between May 28, 2020 and December 6, 2020.  Moreover, when contacted about the incidents that occurred on December 6, 2020; December 10, 2020, and December 15, 2020 (again, which appear to have occurred on social media), Plaintiffs" Complaint confirms that AFS responded to those incidents with meetings and response to emails.  Significantly, Plaintiffs point to no incidents of harassment by Student 1, Student 2 or Student 3 thereafter.  To the contrary, Plaintiffs point to a message from a completely different student ("Student 4") that occurred six months later, which referred to Student Doe as a "privileged white [expletive]."[2]  As AFS's actions in December 2020 effectively ended any alleged harassment toward Student Doe, it is clear that Plaintiffs cannot sustain their burden of demonstrating deliberate indifference on the part of AFS.  Accordingly, Count V of Plaintiffs' Complaint should be dismissed as a matter of law.

F.     Student Doe's Rehabilitation Act Claim Fail as a Matter of Law.

It is well-established that Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.... ***S.H. ex***

---

[2] Significantly, there is no other mention of Student 4 in Plaintiffs' Complaint and certainly no allegation that AFS had actual notice of potential harassment between that Student and Student Doe.

***rel. Durell v. Lower Merion School Dist.***, *729 F.3d 248, 260 (3d. Cir. 2013)*, *quoting 29 U.S.C. §*
*794(a)*.  To make out a *prima facie* case under the Rehabilitation Act, a plaintiff must show: (1)
he or she is handicapped or disabled as defined under the statute; (2) he or she is otherwise qualified
to participate in the program at issue; and (3) he or she was precluded from participating in a
program or receiving a service or benefit because of his or her disability. ***CG v. Pa. Dep't of Educ.***,
*734 F.3d 229, 235 (3d. Cir. 2013)*.  The Third Circuit has held that "claims for compensatory
damages under § 504 of the RA…also require a finding of intentional discrimination" and that  "a
showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of
the RA [and the ADA]." ***S.H.***, *729 F.3d at 263*.  In order to sustain their burden to demonstrate
deliberate indifference under the Rehabilitation Act, a plaintiff "must present evidence that shows
both: (1) *knowledge* that a federally protected right is substantially likely to be violated..., and (2)
*failure* to act despite that knowledge." ***Id.*** *at 265* (internal citation omitted).  While "[d]eliberate
indifference does not require a showing of personal ill will or animosity toward the disabled
person," "[i]t does, however, require a deliberate choice, rather than negligence or bureaucratic
inaction." ***Id.*** *at 265* (internal citation omitted).

Here, Plaintiffs' Complaint alleges that AFS violated Section 504 of the Rehabilitation Act
by not evaluating Student Doe, by not convening a Section 504 meeting, by not issuing a Section
504 Plan, and by not providing Student Doe with accommodations and supplement services." Pl.
Compl., at ¶ 180.  Despite these allegations, Plaintiffs have failed to plead actual facts
demonstrating that Student Doe was discriminated against "solely by reason of her or his
disability" and that AFS acted with "deliberate indifference" as required by the Third Circuit.
Indeed, there is no allegation in the Complaint indicating that AFS excluded Student Doe from
any program at AFS because of a disability or that Student Doe was denied any benefits because

of a disability.  To the contrary, Plaintiffs' Complaint appears to articulate a higher standard—one that is typically seen under the IDEA—in arguing that AFS needed to provide further accommodations while Student Doe attended AFS.  Of course, the Complaint confirms that Student Doe was provided with a number of academic accommodations and accommodations in connection with Student Doe's anxiety in class.  As a result, Plaintiffs cannot demonstrate their burden of establishing a violation of the Rehabilitation Act.  Similarly, Plaintiffs' Complaint makes the conclusory allegation that "AFS knew that a federally protected right was substantially likely to be violated and failed to act despite that knowledge" in an effort to demonstrate deliberate indifference by AFS.  Of course, the law is clear that this court  need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss."  There are no allegations demonstrating any deliberate choice by AFS to violate any rights under the Rehabilitation Act.  Accordingly, Count VI of Plaintiffs' Complaint should be dismissed.

> G.     Plaintiffs' Request for Punitive Damages Should be Stricken.

The Pennsylvania Supreme Court reiterated in ***Rizzo v. Haines***, *555 A.2d 58 (1989)*, the clear standard that has been established for the awarding of punitive damages, holding that:

> This Court has adopted Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages. That provision permits punitive damages for conduct that is "outrageous because of the defendant's evil motives or his reckless indifference to the rights of others."  Restatement (Second) of Torts Section 908(2) (1977).  A court may award punitive damages only if the conduct was malicious, wanton, reckless, willful or oppressive.  The proper focus is on the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties..."  In addition, the actor's state of mind is relevant.  The act or omission must be intentional, reckless or malicious.

***Rizzo***, *520 Pa. at 507* (*internal citations omitted*).  Punitive or exemplary damages are awarded only for outrageous conduct which is defined as acts done with bad motive or reckless indifference

to the interest of others. **_Hutchison v. Luddy_**, *870 A,2d 766, 770 (Pa. 2005)*.  In **_Smith v. Cellotex Corp._**, *564 A.2d 209 (Pa. Super. Ct. 1989)*, the court concluded that punitive damages can only be awarded in circumstances where the evidence supports the contention that the defendant's actions were "intentional, reckless or malicious."  **_Id._** *at 211*

Here, Plaintiffs' "Prayer for Relief" requests that the "Court order AFS to pay common-law punitive damages in an amount to be determined at trial."  Plaintiffs' Complaint, however, fails to sett forth any allegations in support of a claim for punitive damages.  While Plaintiffs use the word "outrageous" and allege that "AFS's conduct was motivated by callous indifference," Plaintiffs have failed to set forth any facts which would support an allegation that AFS acted with the requisite state of mind to support a claim for punitive damages.  It is evident from even a cursory review of Plaintiffs' Complaint that Plaintiffs are merely alleging negligence action by AFS in response to allegations of purported bullying and parents' disagreement with the actions taken by AFS.  This, of course, does not suffice to support an award of punitive damages.  Accordingly, Plaintiffs' request for punitive damages should be stricken.

## IV.  <u>CONCLUSION</u>

Based upon the foregoing, Defendant respectfully requests that its Motion to Dismiss Plaintiffs' Complaint be granted and that an Order be entered dismissing all claims against Defendant, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER
  COLEMAN & GOGGIN**

BY: _____

LEE C. DURIVAGE
Identification Number: 205928
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Phone: (215) 575-2584
Fax: (215) 575-0856

Attorney for Defendant,
Abington Friends School

Dated: March 7, 2022

-19-

## CERTIFICATE OF SERVICE

I, Lee C. Durivage, Esquire, do hereby certify that a true and correct copy of Defendant,

Abington Friends School's Motion to Dismiss Plaintiffs' Complaint and Memorandum of Law in

Support of its Motion to Dismiss was served upon all counsel by electronic service through the

Court's ECF system at the following address:

Scott H. Wolpert, Esquire
Christine M. Gordon, Esquire
**Timoney Knox, LLP**
400 Washington Drive
Fort Washington, PA 19034

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY: _____
LEE C. DURIVAGE
Attorney for Defendant,
Abington Friends School

Dated: March 7, 2022