**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STUDENT DOE**, minor suing under fictitious name | : |
| for privacy reasons, by and through STUDENT DOE'S parents, | : |
| **FATHER DOE** and **MOTHER DOE**, | : |
| suing under fictitious names to protect the identity | : |
| and privacy of **STUDENT DOE**, their minor child, | : |
| | : CIVIL ACTION NO. 22-14 |
| and | : |
| | : |
| **FATHER DOE** and **MOTHER DOE**, individually and on their | : |
| own behalf, | : |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| **ABINGTON FRIENDS SCHOOL**, | : |
| Defendant. | : |
| | : |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION…………………………………………………..1

II.    LEGAL STANDARD………………………………………………...2

III.   STATEMENT OF RELEVANT FACTS…………………………………..3

IV.    ARGUMENT…………………………………………………5

       A. Plaintiffs Have Sufficiently Pled Their Breach of Contract Claim (Count I)……..5

       B. Plaintiffs Have Sufficiently Alleged A Cause of Action for Intentional
          Infliction of Emotional Distress (IIED) (Count II)………………………………11

       C. Plaintiffs Have Sufficiently Alleged A Cause of Action for Negligent
          Infliction of Emotional Distress (NIED) (Count III)…………….......................12
          Plaintiffs Have Sufficiently Alleged A Cause of Action for Violation of

       D. Title VI of the Civil Rights Act (Count IV)……………………………………...13

       E. Plaintiffs Have Sufficiently Alleged A Cause of Action for Violation of
          Section 504 of the Rehabilitation Act (Count V)…………………………...19

       F. AFS's Request to Strike Plaintiffs' Request for Punitive Damages Should
          Be Denied……………………………………………………….......24

V.     CONCLUSION…………………………………………………25

# TABLE OF AUTHORITIES

*Adam C. v. Scranton Sch. Dist.*, No. 7-cv-532, 2011 U.S. Dist. LEXIS 102981
  (M.D. Pa. Sept. 13, 2011)……………………………………………………………………………….23

*Alexander v. Choate*, 469 U.S. 287, 105 S. Ct. 712 (1985)……………...………………….....20

*Andrews v. City of Phila*, 895 F.2d 1469 (3d Cir. 1990)…………..………………………….16

*Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200 (M.D. Pa. 2016)………………………….24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………………....2

*Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 2016 U.S. Dist. LEXIS 135358
  (M.D. Pa. 2016)…………………………………………………………………………………8

*Brandt v. Anheuser-Busch, Inc.*, 2007 WL 1175751 (D.N.J. April 19, 2007)………..……...12

*Britt v. Chestnut Hill College*, 632 A.2d 557 (Pa. Super. Ct. 1993)…………………………6, 11

*Cavaliere v. Duff's Business Inst.*, 605 A.2d 397 (Pa. Super. 1992)……………………….6

*David v. Neumann Univ.*, 187 F.Supp. 3d 554 (E.D. Pa. 2016)………………………......8, 11

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)…………………………..14, 15, 17, 18

*Denton v. Silver Stream Nursing and Rehabilitation Center*, 739 A.2d 571
  (Pa. Super. 1999)………………………………………………………………………………13

*Dillon v. Ultrasound Diagnostic Sch.*, 1997 U.S. Dist. LEXIS 20795
  (E.D. Pa. Dec. 16, 1997)…..…………………………………………………………………6, 7

*Dobson v. Milton Hershey School*, 356 F.Supp. 3d 428 (M.D. Pa. 2018)……………………8

*Doe v. Phila. Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25
  (Pa. Super. Ct. 2000)……………………………………………..…………………………...13

*Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799
  (E.D. Pa. Sept. 13, 2017)…..……………………………………………………………6, 11, 13

*Elmi v. Kornilenko*, No. 17-cv-177, 2018 U.S. Dist. LEXIS 33950 (W.D. Pa. 2018)…………25

*Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623 (W.D. Tex. 2013)…………….....16, 18

*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017)…………………………………………20

1872568-1

*G. v. Faye School*, 931 F.3d 1 (1st Cir. 2019)……………………………………………………8

*Gjeka v. Del. County Cmty. College*, No. 12-4548, 2013 U.S. Dist. LEXIS 73054
 (E.D. Pa. May 23, 2013)………..……………………………………………………………………11

*Gould Elecs., Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000)………………………………..2

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)……..…………………………………………16

*Hughes v. Missouri Baptist Univ.*, 2021 WL 2042264 (E.D. Mo. 2021)………………………...8

*Hutchison ex rel. Hutchinson v. Luddy*, 870 A.2d 766 (Pa. 2005)……………………………24

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002)………………...2

*Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272 (3d Cir. 1996)………………………….20

*J.L. v. Ambridge Area Sch. Dist.*, 622 F.Supp. 2d 257 (W.D. Pa. 2008)……………..……..20, 21

*Jones v. Indiana Area Sch. Dist.*, 397 F. Supp. 2d 628 (W.D. Pa. 2005)……………...………17

*Kim v. Villanova Univ.*, No. 21-1879, 2021 U.S. Dist. LEXIS 177066
 (E.D. Pa. Sep. 16, 2021)……………………………..…………………………………………….8

*L.T. v. Mansfield Twp. Sch. Dist.*, No. 4-1381, 2009 U.S. Dist. LEXIS 21737
 (D.N.J. Mar. 17, 2009)………..……………………………………………………………...23

*Melissa S. v. Sch. Dist.*, 183 Fed. Appx. 184 (3d Cir. 2006)…………………………………20

*Merrow v. Goldberg*, 672 F. Supp. 766 (D. Vt. 1987)……………………………………………6

*Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1027 (9th Cir. 1998)…………..…15

*Nathanson v. Medical Coll. of Pennsylvania*, 926 F.2d 1368 (3d Cir. 1991)………..……....20

*O'Neill v. Montgomery County Community Coll.*, No. 05-5169 (E.D. Pa. Dec. 13, 2006)……12

*Price ex rel. O.P. v. Scranton Sch. Dist.*, No. 11-0095, 2012 U.S. Dist. LEXIS 1651
 (M.D. Pa. Jan. 6, 2012)………..…………………………………………………………15, 17

*Reardon v. Allegheny College*, 926 A.2d 477 (Pa. Super. Ct. 2007)………….…………………6

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238 (3d Cir. 1999)……………………21

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.2d 1114
 (10th Cir. 2008)………………………………………………………………………………17

iii

*Rush v. Scott Specialty Gases, Inc*., 113 F.3d 476 (3d Cir. 1997)………………………………16

*Ryan v. Temple Univ.*, 535 F.Supp. 3d 356 (E.D. Pa. 2021)……………………………………..8

*Sabo v. UPMC Altoona*, 386 F. Supp.3d 530 (W.D. Pa. 2019)…………………………………11

*Scampone v. Grane Healthcare Co.*, 11 A.3d 967 (Pa. Super. 2010)…………………………24

*Shadie v. Hazleton Area Sch. Dist.*, 580 Fed. Appx. 67 (3d Cir. 2014)…………..…………21

*S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786 (W.D. Pa. 2016)…………………………17

*Swartley v. Hoffner*, 734 A.2d 915 (Pa. Super. Ct. 1999)…………….……………………..6

*Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650 (Pa. 2000)…………………………………12

*Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F.Supp.2d 952
  (D. Kansas 2005)…..………………………………………………………………...16

*Toney v. Chester Cnty. Hosp.*, 961 A.2d 192 (Pa. Super. Ct. 2008)…..………….……………..13

*Vurimindi v. Fuqua Sch. of Bus.*, 435 Fed. Appx. 219 (3d Cir. 2011)…………………………..8

*Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163 (3d Cir. 2002)……………………...19

*W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995)…………………………………………………20

*Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517 (3d Cir. 2011)………....……...14, 18

*Williams v. Pennridge Sch. Dist.*, No. 15-4163, 2018 U.S. Dist. LEXIS 205957
  (E.D. Pa. Dec. 4, 2018)…..……………………………………………………………...14

29 U.S.C. §794(a)…………………………………………………………………………..20

iv

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

**STUDENT DOE**, minor suing under fictitious name    :
for privacy reasons, by and through STUDENT DOE'S parents,    :
**FATHER DOE** and **MOTHER DOE**,    :
suing under fictitious names to protect the identity    :
and privacy of **STUDENT DOE**, their minor child,    :
   :
   : CIVIL ACTION NO. 22-14
and    :
   :
**FATHER DOE** and **MOTHER DOE**, individually and on their    :
own behalf,    :
                Plaintiffs,    :
      vs.    :
   :
**ABINGTON FRIENDS SCHOOL**,    :
               Defendant.    :
_____ :

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs, Father Doe and Mother Doe, individually and on behalf of their minor child, Student Doe (collectively, "Plaintiffs"), by and through their counsel, Timoney Knox, LLP, respectfully submit this brief in opposition to Defendant, Abington Friends School's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion") (ECF No. 8). For the reasons set forth below, Plaintiffs submit that Defendant's Motion must be denied.

## I. INTRODUCTION

While attending Abington Friends School (hereinafter "AFS"), Student Doe, a white, Jewish student who was diagnosed with a Specific Learning Disability and Anxiety, was subjected to a sustained campaign of harassment and bullying both in school and virtually on the basis of Student Doe's race, ethnicity and religion. In the face of Plaintiffs' reports, complaints and appeals for assistance, AFS school administrators ignored and/or violated its contractual obligations to follow its own specific written rules and procedures that were in place to respond to major violations of

1

community standards at AFS and to respond to complaints of bullying and harassment at AFS. AFS's actions and inaction in response to Plaintiffs' reports allowed the harassment and bullying to continue unabated in violation of Student Doe's rights under contract, as well as under federal and Pennsylvania law, resulting in ongoing physical, mental and emotional injuries to Student Doe as well as Student Doe's exclusion from in-person learning and ultimate withdrawal from AFS at the end of the 2020-21 school year. During the 2020-21 school year, AFS also failed to accommodate Student Doe's disabilities in violation of its contractual obligations and of Student Doe's rights under federal law. Plaintiffs bring this action against AFS, a recipient of federal funds, for breach of contract, intentional and negligent infliction of emotional distress, violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d *et seq*., and violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794. AFS has filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint. Plaintiffs respectfully submit that AFS's Motion lacks merit and must therefore be denied.

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under F.R.C.P. 12(b)(6), "the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." ***Gould Elecs., Inc. v. United States***, 220 F.3d 169, 178 (3d Cir. 2000). The Court must "draw all reasonable inferences in favor of the non-moving party." ***In re Rockefeller Ctr. Properties, Inc. Sec. Litig.***, 311 F.3d 198, 215 (3d Cir. 2002). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they plead sufficient facts to state a "facially plausible" claim for relief and thus should be afforded an opportunity to offer evidence in support of their claims. ***Id.***; ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007).

2

III.    STATEMENT OF RELEVANT FACTS

Student Doe is a white, Jewish child diagnosed with a Specific Learning Disability and Anxiety who attended AFS during Student Doe's 8th grade (2019-20) and 9th grade (2020-21) school years. (Am. Compl. ¶2). Student Doe's parents and AFS entered into a binding enrollment contract for both school years. (Am. Compl. ¶18). By entering into these AFS enrollment contracts, which reference and incorporate "the rules and regulations of [AFS] as stated in its current handbook (available online) and other publications and notices" (Am. Compl., Ex. "A", pg. 1), and by paying the required tuition each school year, Plaintiffs became entitled to all the rights conferred by the promises in the enrollment contracts, the AFS Handbooks and other written school policies and publications and AFS was contractually bound to keep those promises to the Plaintiffs. (Am. Compl. ¶18). The specific terms in the enrollment contracts and the AFS Handbooks are discussed in Section IV, A herein.

During the 2019-20 and 2020-21 school years, Student Doe was subjected to racially-charged harassment and bullying, anti-Semitic comments, and an increasingly hostile environment at AFS. (Am. Compl. ¶2; 36). During that time, a group of black AFS students singled out Student Doe, denounced Student Doe as a "racist," openly referred to her as a racist Jew, and openly harassed and bullied Student Doe at school, as well as through text messaging and on social media on the basis of Student Doe's race, ethnicity, national origin and religion. (Am. Compl. ¶3, 110). These black AFS students also began to coerce other AFS students into falsely accusing Student Doe of being a "racist" and of using the "N-word," and even on one occasion spread around a photo of one of Student Doe's friends with an offensive caption on it that said "Look at this [N-word]" and falsely telling other AFS students that Student Doe had created it and shared it on social media, which was not true. (Am. Compl. ¶3, 70-72). These AFS students also anonymously posted a meme on the AFS Confessions Instagram account, which was followed by 132 members of the AFS community, that showed two

pictures of Student Doe side-by-side to show the difference in Student Doe's skin's complexion when Student Doe used bronzer, and called Student Doe a "racist." (Am. Compl. ¶3, 67). These and other actions by Student Doe's peers resulted in a hostile school environment at AFS. (Am. Compl. ¶132).

These same AFS students demonstrated hostility toward Jewish students at AFS, including Student Doe, and made numerous anti-Semitic remarks to Student Doe at school, including, but not limited to, one student telling Student Doe (and others at AFS) that "all Jews were racist" and that he had "never met a Jew who wasn't racist," in order to both harass and offend Student Doe on the basis of Student's Doe's Jewish race, ethnicity, national origin and religion, and to continue to perpetuate the false narrative and accusations of Student Doe being a "racist." (Am. Compl. ¶4, ¶37). Another AFS student sent Student Doe an image which depicted a photo of Adolf Hitler in full Nazi uniform with the statement, "I would make a Jew joke but I'm sure you've heard it 6 million times." (Am. Compl. ¶4, 41). Such anti-Semitic comments and messages were made and/or sent to Student Doe to both harass and bully Student Doe on the basis of Student's Doe's race, national origin and religion.

Father Doe and Mother Doe immediately reported each of the incidents of bullying and harassment to the AFS administration and staff, including to Student Doe's 8th grade Academic Advisor (Justin Solonynka), AFS Counselor (Kevin Ryan), the Head of the Upper School (Dom Gerard), the Head of School (Richard Nourie), the Head of AFS Middle School (Matt Eskin). Although AFS administration and staff repeatedly acknowledged the harassment and bullying that was occurring and repeatedly assured Plaintiffs that AFS would take steps to address it, AFS improperly and intentionally ignored the harassment, and/or failed to follow the specific written policies and procedures found in the AFS Handbook to discipline the specific group of AFS students, or to take prompt action to investigate and to halt their campaign of harassment and bullying against Student Doe. (Am. Compl. ¶5; 42-48; 64-127).

4

By its actions and inaction, AFS endorsed the false and malicious harassment and bullying of Student Doe and it continued throughout the 2020-21 school year. (Am. Compl. ¶5; 128). As a result, although AFS school refused to take any further action and considered the matter resolved, the harassment and bullying by AFS students toward Student Doe continued – aided and abetted by AFS and its administrators – with, for example, another AFS student sending Student Doe a message as late as May 5, 2021 calling Student Doe a "privileged white [expletive]." (Am. Comp. ¶6; 128). For the remainder of the 2020-21 school year, Student Doe remained shunned by AFS students, was isolated and suffered, and continues to suffer ongoing, severe physical, mental and emotional trauma. (Am. Compl. ¶6; 129). Student Doe was never reintegrated into the AFS community, never received an apology or an acknowledgment from any of the AFS students involved (except one) of the pain they caused Student Doe, was never socially reacquainted with or accepted by Student Doe's peers at AFS, and was not emotionally able to return to campus for in-person learning for the remainder of the 2020-21 school year. (Am. Compl. ¶6; 130). After their pleas to AFS for help for their child were met with indifference and deliberate failure to act, Father Doe and Mother Doe were left with no choice but to withdraw Student Doe from AFS at the end of the 2020-21 school year in order to remove Student Doe from the hostile school environment at AFS. (Am. Compl. ¶6; 132).

Additionally, throughout Student Doe's 9th grade school year (2020-21), AFS failed to recognize its legal obligations as a recipient of federal funds, as well as its contractual obligations pursuant to its own Handbook and other written school policies, to support Student Doe, who was a qualified individual with disabilities (including a Specific Learning Disability and Anxiety). (Am. Comp. ¶7; 57).

1871284-2

## IV.    ARGUMENT

### A.  Plaintiffs Have Sufficiently Pled Their Breach of Contract Claim (Count I)

Contrary to AFS's assertions, Plaintiffs have sufficiently pled their breach of contract claim in the Amended Complaint. Pennsylvania courts uniformly recognize that "the relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause of action against [an] institution for breach of contract where the institution *ignores or violates* portions of the written contract." *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 810-811 (E.D. Pa. Sept. 13, 2017) (emphasis added), citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999) (citations omitted); *see Britt v. Chestnut Hill College*, 632 A.2d 557, 560 (Pa. Super. Ct. 1993) ("An institution may make a contractual obligation to a student which it is not free to later ignore."); *Cavaliere v. Duff's Business Inst.*, 605 A.2d 397, 401 (Pa. Super. 1992) (opining that, if contract with school were to provide for certain specified services, failure to provide those services would constitute viable breach of contract claim).

To the extent AFS argues that the entire contract between AFS and the Plaintiffs is embodied solely in the enrollment agreements, and/or that the enrollment agreements themselves need to provide an affirmative duty on the part of AFS to adhere to any specific provision of the Handbook in order for the Handbook to be included in the parties' contract, AFS flatly misstates the law. (*See* AFS's MOL, pg. 11). Under Pennsylvania law, the contract between an educational institution and a student is **not** limited to the enrollment agreement, nor to any one, individual document, but instead includes all of the "guidelines, policies and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999), citing *Merrow v. Goldberg*, 672 F. Supp. 766, 774 (D. Vt. 1987) ("terms of the contract are contained in the brochures, course offering bulletins and other official statements, policies

6

and publications of the institution"); ***Reardon v. Allegheny College***, 926 A.2d 477, 480 (Pa. Super. Ct. 2007) (student handbook also part of contract with student); ***Dillon v. Ultrasound Diagnostic Sch.***, 1997 U.S. Dist. LEXIS 20795, *7-8 (E.D. Pa. Dec. 16, 1997) ("general course bulletins, school catalog, and National Guide to Educational Credit for Training Programs entry, which were made available to them as students by defendants, form a binding contract"). Importantly, the explicit promises and terms of the contract as issue here were created and established **by AFS** and **AFS required** Plaintiffs and AFS to be bound by and follow these terms. AFS's attempts herein to evade any consequences for its deliberate and ongoing failure to comply with those terms that AFS created, established and required must be rejected.

It is equally well-established that students are entitled to sue an educational institution which breaches that contract. *See e.g., **id.***, ("Pennsylvania law permits students to sue a university or college for breach of contract."). To state a claim for breach of contract under Pennsylvania law, plaintiff must plead: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" ***Doe v. Trs. of the Univ. of Pa.***, 270 F. Supp. 3d 799, 810-811, 2017 U.S. Dist. LEXIS 148086, *14 (E.D. Pa. Sept. 13, 2017) (citations omitted). Plaintiffs have expressly and sufficiently pled facts in support of each of these elements, as referenced below.

In its Motion, AFS has attacked Plaintiffs' Amended Complaint by mischaracterizing Plaintiffs' allegations, AFS's own contractual commitments and the applicable law. AFS contends that Plaintiffs' breach of contract claim should be dismissed, citing to multiple cases where courts have rejected breach of contract claims premised on an alleged violation of handbook/policies and procedure manuals (*see* AFS's MOL, pgs. 8-12), but all of the cases on which AFS relies are clearly distinguishable from the instant case because the plaintiffs in those cases only made general, vague

7

references to violations of handbook provisions or publications, instead of pleading identifiable contractual promises that the defendant school failed to honor, as Plaintiffs have done herein.[1]

Unlike the cases relied upon by AFS, Plaintiffs herein have specifically pled the various explicit promises and terms of the contracts that were breached by AFS, how they were breached by AFS, and resulting damages. (Am. Compl. ¶18, 46-48, 53-57, 79, 89-113, 115-118, 121, 125-126, 128-130, 132-137, 139-157). Specifically, Plaintiffs alleged that AFS included well-defined procedures and policies in AFS's Handbook and Non-Harassment Policy, which expressly promised Student Doe – the victim of harassment and bullying (defined as "major violations of community standards") while attending AFS – the following:

- a "prompt investigation," (*see* Ex. "B" to Am. Compl., at pgs. 26, 31);

- the convening of "the student-faculty Discipline Advisory Council ('DAC') … comprised of trained students, trained members of the faculty, and the Dean of Students," (*id.* at pg. 17);

---

[1] *See e.g.*, ***Dobson v. Milton Hershey School***, 356 F.Supp. 3d 428 (M.D. Pa. 2018) (failed to identify what the contract was, what the breach was, and only included two conclusory statements alleging a breach of contract); ***Ryan v. Temple Univ.***, 535 F.Supp. 3d 356, 369 (E.D. Pa. 2021) (could not point to any specific contract where school promised all classes would be conducted exclusively in-person); ***G. v. Faye School***, 931 F.3d 1 (1st Cir. 2019) (plaintiff did not point to specific terms of an enforceable contract and only cited vague promises to "help"); ***David v. Neumann Univ.***, 187 F.Supp. 3d 554, 559-560 (E.D. Pa. 2016) (plaintiff made only general reference to handbook, syllabi and protocols, but did not point to any specific contractual provisions that were actually breached); ***Kim v. Villanova Univ.***, No. 21-1879, 2021 U.S. Dist. LEXIS 177066 (E.D. Pa. Sep. 16, 2021) (plaintiff merely pled that the school "violated its contract with Mr. Kim through its dismissal letter" and that Mr. Kim was "illegally dismissed" but never explained what the contract was, what its essential terms were, and what terms were allegedly breached); ***Berardelli v. Allied Servs. Inst. of Rehab. Med.***, 2016 U.S. Dist. LEXIS 135358 (M.D. Pa. 2016)(plaintiff based claim on an alleged violation of a general "commitment against discrimination" in the school's anti-discrimination policy alone, as opposed to any specific contractual provision); ***Hughes v. Missouri Baptist Univ.***, 2021 WL 2042264, *13 (E.D. Mo. 2021) (plaintiff did not point to an identifiable contractual promise that university failed to follow); ***Vurimindi v. Fuqua Sch. of Bus.***, 435 Fed. Appx. 219 (3d Cir. 2011) (mission statement describing school's desire to provide the "highest quality education" was not specific promise on which to base a breach of contract action).

8

- a DAC process, which was "rooted in the Quaker Clearness process, where members of the community gather together to reach clarity about how to solve problems" (*id.* at pg. 17);

- a DAC meeting where students "would present their account of the events to DAC" (*id.* at pg. 17);

- a DAC recommendation – "reached by consensus", "taking all of the circumstances of a particular situation into consideration" – for "appropriate consequences," which could include out-of-school suspension, dismissal, expulsion, after-school detentions, loss of free periods, day-long detentions and/or the "typical DAC consequence" of "an apology to the appropriate party or a written reflection" (*id.* pgs. 17-18);

- a DAC process that "me[t] the needs of the person who fe[lt] they [we]re a victim," by encouraging "facilitated talks with all of the parties involved" in an effort to "bring healing" and "reach closure" (*id.* at pgs. 17-18);

- the involvement of a trained DAC committee that, expressly by design, would not only recommend "consequences for violations of community standards," but was "also concerned with how ***all*** parties involved [including the victim of the violations of community standards] reach[ed] closure" (*id.* at pg. 17 (emphasis in original)); and

- that the students found to have violated the non-harassment policy "will be subject to disciplinary action, including dismissal from school for serious violations, even in the case of a single expression, act, or gesture" (*id.* at pgs. 31).

Plaintiffs have also sufficiently alleged how AFS breached those promises. Plaintiffs have alleged that the investigation and disciplinary process utilized by AFS to address the major violations of community standards and respond to the reports of ongoing harassment and bullying of Student Doe was flawed and in violation of the specific well-defined procedures provided in the AFS Handbook, where AFS failed to promptly investigate each of the reported incidents of harassment and bullying, failed to convene the DAC, failed to discipline the students who victimized Student Doe, and failed to facilitate a resolution between the students in order to bring healing and reach closure for Student Doe. (Am. Compl. ¶47, 108-109, 118-121, 125-130, 154).

Plaintiffs also alleged that AFS included specific promises in the Upper School Handbook related to accommodating students with disabilities, including Student Doe – a student diagnosed with

9

a Specific Learning Disability and Anxiety – which are enforceable as contractual promises, which included:

- "modifications" to address Student Doe's learning differences (*see* Ex. "B" to Am. Compl., at pg. 14);

- the weekly convening of an Upper School Student Support Team ("SST") meeting to address academic, behavioral, social or emotional issues of Student Doe as they arose (*id*. at pgs. 13-14);

- the development, sharing and/or implementation of a "Formal Education Plan" during Student Doe's 9th grade school year (*id*. at pg. 14);

- the assistance of the Wilf Learning Center Director to work with Student Doe to identify supplemental strategies to assist [Student Doe] in [Student Doe's] learning during Student Doe's 9th grade school year (*id*. at pg. 14);

- once a request for accommodation or adjustments was made to AFS, an "interactive process with parents (and possibly the student)," to discuss the need, assess the accommodation request, discuss issues with the parents, and to issue and implement an "Accommodation Plan" to accommodate Student Doe's disabilities during Student Doe's 9th grade school year (*id*. at pg. 34).

Plaintiffs have also sufficiently alleged how AFS breached those promises. Specifically, during the entirety of Student Doe's 9th grade school year (2020-21), AFS failed to convene an Upper School SST meeting, failed to provide and/or implement a Formal Education Plan, failed to engage in an interactive process with Plaintiffs and to issue or implement an Accommodation Plan for Student Doe, and failed to provide the assistance of the Wilf Learning Center Director to work with Student Doe, even after Father Doe and Mother Doe specifically notified her of Student Doe's need for additional support and requested her assistance, and even after their numerous reports to AFS of the increase in Student Doe's anxiety during that school year. (Am. Compl. ¶57-62, 151-154(l)-(n)).

AFS cannot plausibly assert, particularly at this procedural stage of this litigation, that its promises were merely "aspirational", as opposed to contractual, nor assert that Plaintiffs are second-guessing AFS's judgment in the operation of its school. (AFS's MOL, pgs. 9-10). Terms

10

"contractually guaranteeing a right to specific types of investigation, support, or sanctions" – which is what AFS's documents contain – are enforceable. See ***David v. Neumann Univ.***, 187 F. Supp. 3d 554, 560 (E.D. Pa. 2016); *see also, e.g.*, ***Doe v. Univ. of the Scis.***, 961 F.3d 203, 211-15 (3d Cir. 2020) (holding that appellant had stated a breach of contract claim based on the university's student handbook and sexual misconduct policy); ***Gjeka v. Del. County Cmty. College***, No. 12-4548, 2013 U.S. Dist. LEXIS 73054, *40 (E.D. Pa. May 23, 2013) (court denied college's motion to dismiss a claim that it breached contractual provisions in its Harassment Policy "by not providing a learning environment free from discrimination and not encouraging faculty or students to 'bring questions about sexual harassment or discrimination to the attention of [defendants]'"; court held that plaintiff plausibly pled the existence of a contract, a breach by the college of a duty imposed by the contract and resultant damages); ***Britt v. Chestnut Hill College***, 429 Pa. Super. 263, 632 A.2d 557 (1993) (the court reversed the lower court and reinstated the plaintiff's breach of contract claim, holding that 'an institution may make a contractual obligation to a student which it is not free to later ignore.'). Under the legal principles discussed herein, Plaintiffs' allegations are more than sufficient to state a plausible claim that AFS breached the contractual obligations listed above and AFS's Motion to Dismiss should be denied. If AFS seeks to claim that theses contractual obligations were aspirational and general, such assertions should be attempted through factual descriptions in an Answer to Plaintiffs' Amended Complaint and in discovery herein.

### B. Plaintiffs Have Sufficiently Alleged A Cause of Action for Intentional Infliction of Emotional Distress (IIED) (Count II)

The Amended Complaint sufficiently alleges the elements of IIED. In order to state a cognizable claim for IIED under Pennsylvania law, the conduct alleged must be (1) intentional or reckless; (2) it must be extreme and outrageous, and (3) it must cause severe emotional distress. ***Sabo***

11

*v. UPMC Altoona*, 386 F. Supp.3d 530, 556 (W.D. Pa. 2019) (citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)).

In its Motion, AFS does not challenge the sufficiency of the allegations regarding Student Doe's severe emotional distress. Instead, AFS argues for dismissal of Plaintiff's IIED claim based on its contention that the allegations do not meet the level of outrageousness necessary to support a claim for IIED. (AFS's MOL, pg. 14). To the contrary, Plaintiffs' allegations herein are sufficient to make out a claim of IIED at the motion to dismiss stage. The constant and unabated race-based and anti-Semitic harassment and bullying of Student Doe (already known by AFS as a vulnerable student with diagnosed anxiety) at school, through text messaging and on social media, to which AFS failed to promptly investigate and address and then callously blamed Student Doe for not better defending himself or herself – allegations of which are replete in the Amended Complaint (Am. Compl. ¶2-7, 30, 3-47, 63-89, 108-136, 159-162) – is sufficiently "extreme" and "outrageous."

Additionally, AFS's argument that what Student Doe experienced here is not "extreme and outrageous," and/or does not amount to IIED, is not proper for resolution on a motion to dismiss, given the fact-intensive nature of the inquiry. *See Brandt v. Anheuser-Busch, Inc.*, 2007 WL 1175751, at *5 (D.N.J. April 19, 2007) ("An intentional infliction of emotional distress claim is rarely disposed of on a motion to dismiss"); *O'Neill v. Montgomery County Community Coll.*, No. 05-5169 (E.D. Pa. Dec. 13, 2006) (permitting IIED claim and noting the liberal pleading standard under Federal Rule of Civil Procedure 8).

### C. Plaintiffs Have Sufficiently Alleged A Cause of Action for Negligent Infliction of Emotional Distress (NIED) (Count III)

Pennsylvania courts have recognized a claim for NIED in four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably

12

experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. ***Toney v. Chester Cnty. Hosp.***, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008), aff'd, 36 A.3d 83 (Pa. 2011) (citing ***Doe v. Phila. Cmty. Health Alternatives AIDS Task Force***, 745 A.2d 25, 27 (Pa. Super. Ct. 2000), aff'd, 767 A.2d 548 (Pa. 2001). In this case, Student Doe relies on the first scenario, specifically that AFS owed a contractual or fiduciary duty of care to plaintiff that it breached, causing Student Doe to suffer severe emotional distress. (Am Compl. ¶163-168).

"The crux of a negligent infliction of emotional distress claim [under this theory] is that [the defendant] breached some duty they owed to [plaintiff] and that that breach injured [him]." ***Toney***, 961 A.2d at 198-200, quoting ***Denton v. Silver Stream Nursing and Rehabilitation Center***, 739 A.2d 571, 578 (Pa. Super. 1999). At this stage, plaintiff must plead only that (1) the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." ***Id***. (citations omitted). Plaintiffs have met each of these criteria. Student Doe was in a contractual relationship with AFS, as described in detail in Section IV, A above, AFS had a duty to Student Doe, and AFS repeatedly breached that duty. As a direct result of AFS's breach, Student Doe suffered serious harms. (*See* Am. Compl. ¶163-168).[2]

### D.  Plaintiffs Have Sufficiently Alleged A Cause of Action for Violation of Title VI of the Civil Rights Act (Count IV)

Count IV of Plaintiffs' Amended Complaint alleges violation of Title VI. Under Title IX and Title VI, a federally funded school like AFS (Am. Compl. ¶12, 170-174) is liable for monetary damages if it is deliberately indifferent to known sex- or race-based student-on-student harassment "that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an

---

[2] AFS also asks this Court to dismiss Plaintiffs' claim for NIED on the grounds that Pennsylvania courts have not recognized such cause of action in the setting of a school with a duty to a student. This is incorrect. *See Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 827-828 (E.D. Pa. Sept. 13, 2017) (denying university's motion to dismiss student's NIED claim).

educational opportunity or benefit," ***Davis v. Monroe Cty. Bd. of Educ.***, 526 U.S. 629, 633 (1999) (Title IX); ***Whitfield v. Notre Dame Middle Sch.***, 412 F. App'x 517, 522 (3d Cir. 2011) (Title VI).

In order to sustain a  Tile VI claim premised on student-on-student harassment, a plaintiff must establish that (1) the defendant receives federal funds; (2) harassment occurred; (3) the harassment occurred under "circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[ed]; (4) the funding recipient had "actual knowledge" of the harassment; (5) the funding recipient was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school. ***Williams v. Pennridge Sch. Dist.***, No. 15-4163, 2018 U.S. Dist. LEXIS 205957, at *18-19 (E.D. Pa. Dec. 4, 2018) citing ***Davis,*** 526 U.S. at 644-645, 650 (1999).

Contrary to AFS's arguments, Plaintiffs have sufficiently pled that Student Doe was subjected to severe, pervasive, and objectively offensive race-based harassment and bullying. Specifically, Plaintiffs have pled sufficient facts to establish Student Doe was subjected to a sustained campaign of severe, pervasive, and objectively offensive race-based harassment and bullying by Student Doe's black schoolmates over a year - between the Spring of 2020 and the end of the 2020-21 school year – the majority of the time Student Doe attended AFS. Student Doe was repeatedly called a "racist," was repeatedly accused of "blackfishing" for using makeup, was maliciously rumored to call a peer the "N-word" based on a photo doctored by these students and spread around, was shunned by AFS students, was called a "privileged white [expletive]" was referred to as a racist Jew on multiple occasions, was sent a meme with a picture of Adolf Hitler referencing "Jew jokes" and 6 million (i.e., the estimated number of Jewish people deliberately killed during the Holocaust) - and these, and other incidents, happened both within and outside the school. (Am. Compl. ¶2-7, 33-47, 63-89, 108-136, 159-162).

14

Student Doe was subject to consistent harassment so severe that Student Doe suffered and continues to suffer from increased stress and anxiety, which manifested itself in significant and ongoing physical and emotional injuries, requiring ongoing psychological treatment, and led to Student Doe's inability to return to in-person learning at school. Yet, AFS failed to promptly investigate and take adequate remedial action against the AFS students harassing and bullying Student Doe.

Moreover, due to the months of sustained harassment, Student Doe was forced to withdraw from AFS and was thus "effectively denied equal access to an institution's resources and opportunities, the key inquiry under *Davis*. 526 U.S. at 631. *See e.g., Price ex rel. O.P. v. Scranton Sch. Dist.*, No. 11-0095, 2012 U.S. Dist. LEXIS 1651, at *20 (M.D. Pa. Jan. 6, 2012) ("The behavior of [the plaintiff's] classmates caused [her] to leave class, suffer a drop in her grades, withdraw from her position on the school yearbook, and decide to leave the School District altogether. From these facts, a reasonable person could conclude that the daily harassment created a hostile educational environment") (internal citations omitted). Had Student Doe remained, there is no reason to think the harassment would have stopped, and a student cannot be asked to sustain further cruelty and pervasive harassment to prove just how bad the situation is.

AFS trivializes the nature of the harassment Student Doe suffered, callously dismissing it as "sporadic incidents of **teasing** among school children". (AFS's MOL, pg. 19)(emphasis added). This position by AFS is difficult to fathom – the circumstances here included explicit, repeated and disparaging statements based on race, ethnicity, national origin and religion, defamatory statements calling Student Doe a racist and actions directed toward destroying a person's reputation. Moreover, courts recognize that physical assaults are not the only form of harassment that can be severe and pervasive; "words can hurt, particularly in the case of children, and . . . words of a racist nature can hurt especially severely." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1027 (9th Cir.

1998); s*ee e.g., **Fennell v. Marion Indep. Sch. Dist.**, 963 F. Supp. 2d 623, 646 (W.D. Tex. 2013) ("Plaintiffs' allegation that other students repeatedly used these offensive and derogatory epithets . . . adequately alleges that Plaintiffs were subjected to severe and pervasive harassment."); **Theno v. Tonganoxie Unified Sch. Dist. No. 464**, 377 F.Supp.2d 952, 968 (D. Kansas 2005) ("The court finds the school district's argument that the harassment is not actionable because it involved only name-calling and crude gestures, not physical harassment, to be without merit.").

By refusing to properly intervene, AFS permitted such a hostile environment in their school to flourish, and condoned the racial and anti-Semitic harassment of Student Doe. AFS also apparently wrongly views Student Doe's black classmates' misconduct as a series of isolated events rather than a pattern of sustained harassment. Such framing is contrary to the very concept of harassment and a hostile environment, which requires courts to consider "the totality of the circumstances," **Andrews v. City of Phila**, 895 F.2d 1469, 1482 (3d Cir. 1990), and recognize patterns of abuse that compound to poison the workplace or classroom. *See **Harris v. Forklift Sys., Inc**., 510 U.S. 17, 23 (1993) ("[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances."); **Rush v. Scott Specialty Gases, Inc**., 113 F.3d 476, 483 (3d Cir. 1997) ("The harassment did not consist of unrelated, isolated incidents, but constituted a continuous pattern of derogatory remarks, rude behavior, and discriminatory conduct."). **Theno**, 377 F. Supp. 2d at 968 (while "isolated incidents could be characterized as mere insults, teasing, and name-calling, collectively they reflect much more than 'simple acts' of teasing and name-calling. They reflect a pattern of harassment that was arguably severe and pervasive."). So, too, do the harsh and damaging incidents Student Doe was subjected at AFS.

AFS also asserts that Plaintiffs have not plausibly pled a claim for a violation of Title VI because, it argues, the majority of the alleged harassment took place off school grounds and therefore

did not occur under circumstances where AFS exercised substantial control. (AFS's MOL, pg. 19). This argument is clearly without merit. A school's liability under Title VI or Title IX for student-on-student harassment derives not from the misconduct itself but from the institution's deliberate indifference to it. *See e.g., Davis*, 526 U.S. at 648-49. Courts have found that schools must address harassment that occurred in whole or in part outside of school grounds or school activities **if there is a "nexus" between the misconduct and the educational setting**, such as if the off-campus events create a hostile environment. *See e.g., Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.2d 1114, 1121 n.1 (10th Cir. 2008). A school's liability for failing to combat discriminatory harassment does not stop at its borders but rather extends to circumstances when and where "the harasser is under the school's disciplinary authority," *Davis*, 526 U.S. at 646-47.

AFS can clearly be held liable for its failure to respond to Plaintiffs' reports of on- and off-campus harassment and bullying. Surely the substantial effect of Student Doe's classmates' behavior on Student Doe's education – including that she could not return to in-person learning at school and was compelled to withdraw from school at the end of the 2020-21 school year – establishes a nexus.

Within the Third Circuit, multiple district court judges have denied schools' motions for summary judgment or dismissal in cases challenging their responses to harassment that occurred both within and apart from school premises and activities. *See e.g., S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 803 (W.D. Pa. 2016) (finding that school had a responsibility to address verbal insults and threatening text messages that occurred both on and off school grounds); *Price v. Scranton Sch. Dist.*, No. 11-0095, 2012 US Dist. LEXIS 1651, at *25 (finding that plaintiff plausibly demonstrated that school was deliberately indifferent in response to sex-based harassment that occurred in part off campus during summer recess); *Jones v. Indiana Area Sch. Dist.*, 397 F. Supp. 2d 628, 645-645 (W.D. Pa. 2005) (denying defendant's motion for summary judgment because court was unable to find

17

that school's response to student's on- and off-campus harassment of classmate fulfilled school's Title

IX responsibilities under ***Davis***). So, too, have courts in other circuits. *See e.g*., ***Fennell v. Marion***

***Independent Sch. Dist.***, 963 F.Supp.2d 623 (W.D. Tex. 2013) (finding plaintiffs stated claim under

Title VI for school's deliberate indifference in response to race-based harassment that occurred in part

over text messages and Facebook posts).

Additionally, AFS's own policies and Handbook mandate that bullying of a student by other

students, **even when it occurs outside the school setting**, must be investigated and the offender(s)

disciplined by AFS under AFS's disciplinary procedures. Indeed, AFS's "No Harassment Policy"

specifically provided that: "Students should be aware that their off-campus behavior is also covered

under this policy, regardless of when and where the conduct occurred or who was affected by the

student's inappropriate behavior." (*See* Am. Compl., ¶104; and Ex. "B", pg. 29). AFS's definition of

bullying and harassment also specifically included actions that were in-person and on social media,

and provided that AFS had the authority to discipline AFS students for their off-campus conduct. (*See*

¶148; Exhibit B, pg. 17). Student Doe's harassers were clearly under AFS's disciplinary authority and

substantial control. Once again, AFS's position in an attempt to evade responsibility herein is contrary

to the express terms in its own polices and Handbook.

Plaintiffs have also pled sufficient facts to plausibly assert that AFS had actual knowledge of

the harassment and bullying. A school's duty to respond to harassment is triggered by its actual

knowledge of the harassment. ***Whitfield***, 412 F. App'x at 521 (Title VI). Here, Plaintiffs have

sufficiently pled that specific AFS employees, including, at the very least, Sunshine O'Donnell and

Kevin Ryan, were aware of the harassment and bullying during the 2019-20 school year (see Am.

Compl. ¶38, 42-43), and thereafter due to Father Doe's and Mother Doe's repeated reports of the

harassment between May 2020 and the end of the 2020-21 school year. (Am. Compl. ¶42-46; 63-89,

108). As a matter of law, a school's receipt of notice about harassment that has already concluded constitutes "actual knowledge" that triggers the responsibility to respond. *See e.g.* **Warren ex rel. Good v. Reading Sch. Dist.**, 278 F.3d 163, 172 (3d Cir. 2002). Student Doe continued to experience harassment at the hands of Student Doe's peers – and Father Doe and Mother Doe continued to report that harassment to AFS. Thus, AFS did, in fact, have actual knowledge of a continuing hostile environment, triggering the responsibility to respond both to remediate past harms and to prevent continued abuse, but failed to do so.

AFS further contends that Plaintiffs cannot demonstrate a plausible claim of intentional discrimination and/or deliberate indifference, arguing that AFS responded to all incidents with meetings and response to emails, and that AFS's actions in December 2020 effectively ended any alleged harassment toward Student Doe. In so arguing, AFS directly ignores the many factual allegations made in the Amended Complaint that AFS's responses were flawed, the bullying and harassment was ongoing, the shunning and social isolation from her peers was ongoing, and the insults continued well beyond December 2020, through the end of the 2020-21 school year, and led to Student Doe's withdrawal from AFS at the end of the school year. (Am. Compl. ¶63-133). Taking the facts in the Amended Complaint as true, the Court must conclude that Plaintiffs have alleged a plausible claim for harassment on the basis of race, ethnicity and/or national origin in violation of Title VI and AFS's Motion must be denied.

### E. Plaintiffs Have Sufficiently Alleged A Cause of Action for Violation of Section 504 of the Rehabilitation Act (Count V)

Count V of Plaintiffs' Amended Complaint sufficiently alleges a plausible claim for violation of the Rehabilitation Act. The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance … ." 29 U.S.C. §794(a). Section 504 and its

implementing regulations, 34 C.F.R. Part 104 *et seq*. require that qualified individuals with disabilities

not be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

by a recipient of federal financial assistance. The failure to provide accommodations and supplemental

services constitutes discrimination for purposes of Section 504 of the Rehabilitation Act.

As the Third Circuit has explained, "[w]hile the IDEA grants a positive right to a 'free

appropriate public education,' section 504 of the Rehabilitation Act of 1973 essentially prohibits

federally funded entities from denying a free appropriate public education on the basis of disability."

***Melissa S. v. Sch. Dist.***, 183 Fed. Appx. 184, 189 (3d Cir. 2006) (citing ***Jeremy H. v. Mount Lebanon***

***Sch. Dist.***, 95 F.3d 272, 278 (3d Cir. 1996)). "[C]ourts have interpreted section 504 as demanding

certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with

disabilities." ***Fry v. Napoleon Cmty. Sch.***, 137 S. Ct. 743 (2017) (citing ***Alexander v. Choate***, 469

U.S. 287, 299-300, 105 S. Ct. 712 (1985)).

In order to state a claim under section 504 for disability discrimination in the educational

context, plaintiffs must set forth sufficient facts to establish that:

> (1) [Student Doe] is disabled as defined by the Act; (2) that [Student Doe] is otherwise
> qualified to participate in school activities; (3) the school or the board of education
> receives federal financial assistance; (4) [Student Doe] was excluded from participation
> in, denied the benefits of, or subject to discrimination at the school; and (5) the school
> or the board of education knew or should be reasonably expected to know of [Student
> Doe's] disability.

***J.L. v. Ambridge Area Sch. Dist***., 622 F.Supp. 2d 257, 274-75 (W.D. Pa. 2008); ***W.B. v. Matula***, 67

F.3d 484, 492 (3d Cir. 1995) (quoting ***Nathanson v. Medical Coll. of Pennsylvania***, 926 F.2d 1368,

1380 (3d Cir. 1991)). Additionally, where, like here, a plaintiff seeks compensatory damages on

a section 504 claim, the plaintiff must also plead sufficient facts to demonstrate that the discrimination

or denial of benefits at issue was intentional, or at least that the defendant acted with deliberate

20

indifference to the underlying discrimination. *See **Shadie v. Hazleton Area Sch. Dist.***, 580 Fed. Appx. 67, 70 (3d Cir. 2014); ***Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.***, 172 F.3d 238, 253 (3d Cir. 1999) ("But a plaintiff need not prove that defendants' discrimination was intentional."); ***J.L.,*** 622 F. Supp. 2d at 275 ("Further, a plaintiff need not prove that the discrimination required of element (4) is intentional.").

Herein, Plaintiffs have sufficiently alleged a plausible claim for violation of the Rehabilitation Act. Specifically, Plaintiffs have pled that Student Doe is an individual with a disability under Section 504 of the Rehabilitation Act – a Specific Learning Disability and Anxiety. (Am. Compl. ¶190); that Student Doe is otherwise qualified to participate in all school program and activities (Am. Compl. ¶191); that, during all relevant times, AFS offered programs and activities that received federal financial assistance (Am. Compl. ¶193-195); that AFS excluded Student Doe from participation in, denied Student Doe the benefits of its services, programs and activities, and otherwise discriminated against Student Doe based on Student Doe's disability (1) by not evaluating Student Doe, (2) by not convening a Section 504 Meeting, (3) by not issuing a Section 504 Plan or Accommodation Plan, in order to accommodate Student Doe's disabilities at any time during the 2020-21 school year, and (4) by not providing Student Doe with accommodations and supplemental services in violation of its obligations under Section 504 and its implementing regulations (Am. Compl. ¶199); and that AFS knew or should have been reasonably expected to know of Student Doe's disability (Am. Compl. ¶19-30, 52, 57-61, 199). Because Plaintiffs' factual averments support all the elements of a *prima facie* discrimination claim under section 504, Plaintiffs have sufficiently stated a claim upon which relief can be granted.

In its Motion, AFS does not dispute that Plaintiffs have sufficiently plead sufficient facts to support elements 1-3, and 5 of Plaintiffs' Rehabilitation Act claim. Rather, AFS contends that

Plaintiffs have failed to include any allegation indicating that Student Doe was denied any benefits because of a disability.[3] (See AFS MOL, pg. 19). However, to the contrary, the Amended Complaint contains many factual allegations that Student Doe was discriminated against when AFS failed to provide Student Doe with accommodations for Student Doe's disabilities during Student Doe's 9th grade school year and Student Doe was unable to obtain the benefit from the educational programs at AFS. These failures included AFS's (1) failure to evaluate Student Doe, (2) failure to convene a meeting to determine what accommodations Student Doe needed to access the school's programs, (3) failure to issue a written plan that provided for the accommodations Student Doe required as a result of Student Doe's disabilities, and (4) failure to provide accommodations and supplemental services to Student Doe, constituting discrimination under Section 504. (Am. Comp. ¶7; 57-62).

Moreover, AFS issued, as Appendix A to the Upper School Handbook, a Non-Harassment, Non-Discrimination, Non-Retaliation and Accommodations Policy, and also issued and/or published on AFS's website an "SBA Non-Discrimination Compliance Policy," clearly and unambiguously acknowledging its obligations to comply with the regulations issued by the SBA and other governmental agencies, which would also include the regulations issued by the U.S. Department of Education, in enforcing the civil rights laws. (Am. Compl. ¶198). In AFS's SBA Non-Discrimination Compliance Policy, AFS acknowledged its obligation under Section 504 of the Rehabilitation Act . . . to ensure that no otherwise qualified individual with a disability be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

---

[3] AFS argues that because it provided Student Doe with a number of academic accommodations and accommodations in connection with Student Doe's anxiety in class during Student Doe's 8th grade school year, Plaintiffs cannot possibly demonstrate their burden of establishing a violation of the Rehabilitation Act during Student Doe's 9th grade school year. This is without merit. AFS's discriminatory actions and the **complete absence** of disability accommodations during Student Doe's 9th grade school year (despite the provision of accommodations the prior school year) certainly can form the basis of a Section 504 claim.

federal financial assistance, including both academic and non-academic services, and to make reasonable accommodations to disabled individuals to permit such persons to participate in and enjoy the benefits of AFS's programs and activities."

Plaintiffs have alleged that Student Doe continued to struggle academically and with anxiety-related issues and needed support to keep up with Student Doe's classes. (Am. Compl. ¶52). By late-October 2020, Father Doe and Mother Doe noticed that Student Doe was continuing to struggle and reached out directly to the learning specialist and Director of the Wilf Learning Center at AFS requesting that she provide Student Doe additional support moving forward. (Am. Compl. ¶58). They also requested a meeting with her to discuss Student Doe's learning style and to determine how to help Student Doe, and also that she meet with Student Doe directly, but she ignored their requests and these meetings never occurred. (*Id*. at ¶59-60). These failures to provide disability-related accommodations to Student Doe continued throughout the 2020-21 school year, despite AFS's knowledge of the ongoing harm being suffered by Student Doe, including the increase in Student Doe's anxiety. (*Id*. at ¶61).

These allegations that AFS was aware of a disabled student's educational needs and anxiety issues, but failed to develop and implement an appropriate plan in response to accommodate that student's disability-related needs in response, are sufficient to allege that AFS exhibited deliberate indifference. *See e.g.*, ***L.T. v. Mansfield Twp. Sch. Dist.***, No. 4-1381, 2009 U.S. Dist. LEXIS 21737 (D.N.J. Mar. 17, 2009)(court found, after a 5-day bench trial, that plaintiffs had proved that a school district acted with deliberate indifference when it failed to provide an appropriate education to child that accommodated his disability, because the district was ***aware*** of the child's educational needs and health issues, but ***failed to timely develop and implement*** an appropriate educational plan) (emphasis added); ***Adam C. v. Scranton Sch. Dist.***, No. 7-cv-532, 2011 U.S. Dist. LEXIS 102981

(M.D. Pa. Sept. 13, 2011) (denying summary judgment on Section 504 and ADA claims even under intentional discrimination standard where evidence showed that the defendants were aware of conditions in the school that led to the student's physical injury by another student and failed to take adequate steps to protect the student); *Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 212 (M.D. Pa. 2016) ("C.B. required this plan because he was disabled, and the District's awareness of his disabilities in conjunction with its knowing failure to properly implement the plan is sufficient to allege deliberate indifference."). Similarly, Plaintiffs here allege that AFS was aware of Student Doe's educational needs and anxiety issues, but failed to implement and follow an appropriate educational plan to address or accommodate these needs and issues during 2020-21 school year. At this early pleading stage of the case, Student Doe has clearly stated a plausible claim of discrimination under Section 504. Accordingly, AFS's Motion to Dismiss Plaintiffs' Section 504 claim should be denied.

**F.  AFS's Request to Strike Plaintiffs' Request for Punitive Damages Should Be Denied**

Under Pennsylvania law, a defendant can be held liable for punitive damages by way of evidence showing that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005). AFS argues that this Court should dismiss Plaintiffs' claim for punitive damages because, it argues, that Plaintiffs' Amended Complaint failed to set forth any allegations in support of a claim for punitive damages. AFS's argument is without merit. Punitive damages are awarded for outrageous conduct; that is, for acts done with "an evil motive or in reckless indifference to the rights of others." *See Scampone v. Grane Healthcare Co.*, 11 A.3d 967, 991 (Pa. Super. 2010), appealed on unrelated issue, 15 A.3d 427 (Pa. 2011), affirmed on other grounds, 57 A.3d 582 (Pa. 2012).

Here, Plaintiffs allege a course of conduct including, but not limited to, AFS improperly and intentionally and continually failing to follow the policies and procedures found in the AFS Handbook to promptly investigate harassment and bullying, to follow proper procedures to discipline the specific group of AFS students who were openly harassing and bullying Student Doe on the basis of race, ethnicity, religion and/or national origin, or to take prompt action to investigate and to halt their campaign of harassment against Student Doe, a student with known anxiety. (See Am. Compl. ¶5). Plaintiffs further allege that AFS's failure to maintain an educational environment free of discrimination, bullying and harassment on the basis of race, color and national origin, and failure to take prompt remedial action to address the hostile environment to which Student Doe was subjected, were intentional, malicious, and in reckless indifference to Student Doe's protected rights.

Plaintiffs have, at this stage of the case, pled more than mere negligence, to warrant the imposition of punitive damages. The standard, at the pleadings stage, for imposition of punitive damages, is not high, requiring that a plaintiff allege "something more" than negligence, to overcome dismissal. *Elmi v. Kornilenko*, No. 17-cv-177, 2018 U.S. Dist. LEXIS 33950 (W.D. Pa. 2018). Plaintiffs have satisfied their burden.

## V.      CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion be denied in its entirety, or, in the alternative, that Plaintiffs be granted leave to amend to replead any claim the Court is inclined to dismiss.

Dated: April 25, 2022                          Respectfully submitted,

                                                **TIMONEY KNOX, LLP**

                                    By:    /s/ *Scott H. Wolpert*
                                                Scott H. Wolpert, Esquire (PA Bar No. 62894)
                                                Christine M. Gordon, Esquire (PA Bar No. 209391)
                                                400 Maryland Drive
                                                Fort Washington, PA 19034-7544

25

Tel: (215) 540-2656
swolpert@timoneyknox.com
cgordon@timoneyknox.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 25, 2022, I electronically filed the foregoing Response to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint with the Clerk of Court by using the CM/ECF system, which will send notice to:

Lee C. Durivage, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA 19103
LCDurivage@MDWCG.com

By: /s/ *Scott H. Wolpert*
Scott H. Wolpert (PA Bar No. 62894)
TIMONEY KNOX, LLP
400 Maryland Drive
Fort Washington, PA 19034
Ph: 215-646-6000
swolpert@timoneyknox.com
*Attorneys for Plaintiffs*

1871284-2